2010 Ark. App. 101

**Neal HOLLINGSWORTH, Appellant**

v.

**Courtney HOLLINGSWORTH, Appellee.**

**No. CA 09–125.**

Court of Appeals of Arkansas.

Feb. 3, 2010.

William Benjamin Putman, Fayetteville, AR, for appellant.

Jeffrey Howard Watson, Springdale, AR, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Neal Hollingsworth is the paternal grandparent of Cayden Hollingsworth, who was born in September 2000. Cayden is in the custody of his mother, appellee Courtney Hollingsworth (now Massengale). Cayden's father, Paul Holl-

ingsworth, died as a result of a motor vehicle accident in September 2004. On July 1, 2008, Neal Hollingsworth petitioned the trial court to establish grandparent visitation rights. After a hearing, the trial court denied appellant's petition. Mr. Hollingsworth now appeals, arguing that the trial court erred in denying his petition. We affirm.

As a rule, when the setting of visitation is at issue, we will not reverse the trial court absent an abuse of discretion. *Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008). Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Id.* We apply the "clearly erroneous" standard of review to a trial court's findings of fact in domestic relations cases. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). However, a trial court's conclusion of law is given no deference on appeal. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005).

Arkansas Code Annotated section 9–13–103(b)(1) (Repl.2008) provides that a grandparent may petition for reasonable visitation rights if the marital relationship between the parents of the child has been severed by death. That statute further provides, in pertinent part:

(c)(1) There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child.

(2) To rebut the presumption, the petitioner must prove by a preponderance of the evidence the following:

(A) The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation; and

(B) Visitation with the petitioner is in the best interest of the child.

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months; or

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

Mr. Hollingsworth established in his testimony that he has developed a close relationship with Cayden. Mr. Hollingsworth stated that from September 2004 through the end of 2007, Cayden frequently visited him and his wife, Judy, at their home, and often spent the night. Mr. Hollingsworth would sometimes pick Cayden up from school, and he coached his baseball and basketball teams. During the summers of 2005, 2006, and 2007, Mr. Hollingsworth and his wife kept Cayden as opposed to

him going to daycare. Cayden also went on vacations with the Hollingsworths, and visited family members from his father's side of the family. According to Mr. Hollingsworth, he developed a routine on Father's Day where he would take Cayden to the cemetery and put flowers on his father's grave. Mr. Hollingsworth emphasized that Cayden needs to remember his father, and stated that he intends to reinforce that memory.

Mr. Hollingsworth testified that Mrs. Massengale initially stopped, and then sharply restricted his visitation with Cayden beginning in January 2008. According to Mr. Hollingsworth, she no longer allows overnight visitation and when visitation is permitted it is only for a few hours. Mr. Hollingsworth complained that the limited amount of visitation will hurt his relationship with Cayden, and stated that the only way he could maintain their relationship was through court intervention. Mr. Hollingsworth stated that if the trial court awards visitation, he will continue to cooperate with Mrs. Massengale and work with her schedule.

Mr. Hollingsworth's ex-wife and Cayden's paternal grandmother, Julie Nichols, testified about an incident that allegedly occurred when she was traveling to Memphis to visit her daughter. Ms. Nichols was riding in the car with Mr. Hollingsworth, Mrs. Hollingsworth, and Cayden. According to Ms. Nichols, Mr. Hollingsworth's wife made derogatory comments about Mrs. Massengale during the trip. Ms. Nichols acknowledged that she was not sure whether or not Cayden heard the negative comments.[1]

Evidently Ms. Nichols shared this information with Mrs. Massengale, because in her testimony Mrs. Massengale stated that she felt like some comments being made in front of Cayden were making him feel conflicted. She indicated that she had been struggling some with Cayden becoming upset and uncharacteristically quiet. Mrs. Massengale acknowledged that Mr. Hollingsworth's visitation with Cayden has been less frequent since January 2008, but stated that visitation has not been terminated. She testified that visitation has been reduced and there has been no overnight visitation, but explained that she has recently married and is trying to build a solid family foundation for Cayden at home. Mrs. Massengale maintained that she does continue to permit visitation and tries to accommodate an alternate time when Mr. Hollingsworth requests visitation and there is a schedule conflict. Mrs. Massengale further indicated that Mr. Hollingsworth is able to see Cayden on occasions at school and at extracurricular activities such as ball games. Mrs. Massengale acknowledged that it is in Cayden's best interest to have a relationship with Mr. Hollingsworth, and she said she does not intend to keep Cayden away from him. Mrs. Massengale indicated that Cayden is doing very well in school and that her intentions are to structure a better routine for him at her and her husband's home.

In the order being appealed, the trial court made the following pertinent findings:

> The Court finds, by a preponderance of the evidence, that before January 2008, the minor child, Cayden Hollingsworth, spent a considerable amount of time with the Petitioner since the death of the child's father, and that he has had frequent regular contacts with the Peti-

---

1. On rebuttal, Mr. Hollingsworth denied the accusation that his wife had made any such comments.

tioner for at least twelve (12) consecutive months. Therefore, the Petitioner has established a significant and viable relationship between the Petitioner and the child.

The Court further finds that the credible proof in this case establishes that the Petitioner has the capacity to give the minor child love, affection, and guidance.

The Court further finds that the Respondent's concerns regarding the Petitioner or the Petitioner's current wife are legitimate, and that even though it is her decision to limit the contact her child has with the Petitioner, she is not denying altogether, such contact. Therefore, because she is not denying contact between the child and his grandfather, only limiting, there remains a relationship, and as long as there is a relationship, the Court finds there is no harm to the child. However, should such visitation or contact totally be denied by the Respondent, then that is likely to harm the child.

The Court further finds that so long as the Respondent allows contact, even though limited, between the child and the Petitioner, the presumption or special weight given the custodial parent's decision to limit visitation has not been rebutted, and the Petition for Grandparent Visitation Rights as filed by the Petitioner should be, and hereby, is, denied.

Mr. Hollingsworth now challenges the trial court's order denying his petition for grandparent visitation. For reversal, Mr. Hollingsworth argues that the trial court erred in determining that he failed to rebut the presumption that Mrs. Massengale's decision to limit his visitation with his grandson is in Cayden's best interest. Pursuant to Ark.Code Ann. § 9–13–103(e)(2) (Repl.2008), it was Mr. Hollingsworth's burden to prove that the loss of the relationship between him and the child is likely to harm the child, and Mr. Hollingsworth asserts that he met that burden.

In the trial court's order, it found that because appellee is only limiting, and not denying, grandparent visitation, there is no harm to the child and the presumption has not been rebutted. Mr. Hollingsworth contends that this part of the trial court's ruling is based on an erroneous application of subsection (e)(2), which provides that it is his burden to prove that "[t]he *loss* of the relationship between the petitioner and the child is likely to harm the child." (Emphasis added.) Mr. Hollingsworth submits that the evidence in the record demonstrates beyond serious question that it would be harmful to Cayden if he *lost* his relationship with his grandfather.

Mr. Hollingsworth further takes issue with the finding that the limitation in visitation was not harmful to Cayden. Mr. Hollingsworth argues that the primary flaw in the trial court's analysis is that it assumed that the radical difference between the quality and quantity of time Cayden spent with his grandfather before January 2008 and afterward is irrelevant to the question of whether the appellee was acting in Cayden's best interest. By Mrs. Massengale's decision to suddenly stop visitation, and subsequently allow it only on a limited and irregular basis, appellant argues that Cayden's best interests have been compromised. Mr. Hollingsworth asserts that it is essentially undisputed that between September 2004 and January 2008 he and his grandson spent a lot of time together and enjoyed a very positive relationship that benefitted Cayden in many ways. He asserts that the subsequent limitation placed on his visitation, the basis of which was not grounded in fact, has seriously undermined their relationship and precluded Cayden from hav-

ing the love, affection, and guidance of the grandfather who has been devoted to his welfare. Mr. Hollingsworth contends that the trial court clearly erred in finding that Cayden was not harmed by Mrs. Massengale's restrictions on his grandparent visitation, and he asks this court to reverse and remand with instructions to establish visitation rights.

 Arkansas Code Annotated section 9–13–103(c)(1) (Supp.2008) provides that there is a rebuttable presumption that a custodian's decision denying or limiting visitation to the grandparent is in the best interest of the child. In this case, it is undisputed that Mrs. Massengale did not deny, but rather only limited, Mr. Hollingsworth's visitation with Cayden. The trial court ruled that Mr. Hollingsworth failed to rebut the presumption that this limitation was in Cayden's best interest, and on this record we hold that the trial court's decision was not erroneous.

In *Oldham v. Morgan,* 372 Ark. 159, 271 S.W.3d 507 (2008), our supreme court reversed the trial court's order granting grandparent visitation to the appellees. In that case, the grandparents were being afforded visitation but petitioned for a visitation schedule to ensure that they would continue to see the child in the future. Because there was no evidence that the relationship between the grandparents and child had been lost or would be lost, the supreme court determined that the petition for grandparent visitation was premature. Because the grandparents did not prove a loss of the relationship between them and the child that would likely harm the child, the supreme court held that they failed to establish that court-ordered visitation was in the child's best interest and therefore failed to rebut the statutory presumption.

In the case at bar, the relationship between Mr. Hollingsworth and Cayden had not been lost. While the extensive visitation that had been previously permitted by Mrs. Massengale had been curbed, the evidence showed that Mr. Hollingsworth continued to exercise meaningful visitation and interaction with the child. The trial court found that should grandparent visitation be totally denied this would likely harm the child, but that as of yet there had been no harm given the existing contact and relationship between Mr. Hollingsworth and Cayden. We hold that the trial court correctly interpreted and applied the statute, and that it did not abuse its discretion in denying Mr. Hollingsworth's petition for visitation rights.

Affirmed.

VAUGHT, C.J., and PITTMAN, J., agree.